**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**
No. 99-30314

JAMES H. BROWN,
Commissioner of Insurance
for the State of Louisiana as
Liquidator of Physician's
National Risk Retention
Group, Inc.,

                              Plaintiff - Counter Defendant -
                              Appellee - Appellant,

versus

NORMAN F. SLENKER;
SLENKER, BRANDT,
JENNINGS, & JOHNSTON,

                              Defendants - Counter Claimants -
                              Appellants - Appellees.

Appeals from the United States District Court
For the Middle District of Louisiana

August 3, 2000

Before REAVLEY, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

    Norman Slenker and Slenker, Brandt, Jennings, and Johnston ("SBJJ") (collectively, "the Defendants") appeal from a Rule 50(a) judgment entered in favor of James Brown ("the Commissioner"). We affirm in part, vacate in part, and remand for further proceedings.

I

Physicians National Risk Retention Group ("PNRRG") was a risk retention group organized pursuant to Louisiana law. While not a traditional insurance company, PNRRG insured medical doctors in numerous states.

PNRRG insured Dr. David Davoudlarian. Davoudlarian was sued for medical malpractice in a Virginia state court by Karlissa Krombein. Under Davoudlarian's policy, PNRRG had a contractual obligation to defend him. A representative of PNRRG in Georgia contacted Slenker in Virginia. Slenker and his firm, SBJJ, were retained to represent Davoudlarian in the Krombein suit.

In 1990, the first trial in the Krombein suit resulted in a $10,000 verdict against Davoudlarian. The trial court set the verdict aside as to damages, but not as to liability. Thereafter, Krombein made a settlement offer for Davoudlarian's $500,000 policy limit. The Virginia statutory liability cap on medical malpractice damages was $1,000,000. PNRRG realized that a retrial risked creating personal liability for Davoudlarian. However, it felt that the court's decision was a "miscarriage of justice" and was confident that an appeal would either restore the $10,000 verdict or lead to a retrial on all issues. Therefore, in a letter sent by Director of Claims Bart Meehan, PNRRG agreed to pay any damages Davoudlarian might ultimately encounter, up to the $1,000,000 limit.[1]

_____

[1] The parties contest the scope of the $1,000,000 protection provided Davoudlarian. The Commissioner claims that PNRRG agreed to double Davoudlarian's policy limits only for purpose of ensuring further judicial proceedings designed to reduce PNRRG's liability to $10,000 or to result in a defense verdict. Therefore, the $1,000,000 protection applied only to damages imposed on appeal or in subsequent trials. Slenker claims that, in order to convince Davoudlarian not to settle and to prevent bad faith problems, PNRRG agreed to protect Davoudlarian from all personal liability regarding the Krombein lawsuit, regardless of its form or timing. The Meehan letter can be read to support either interpretation. It specifically discusses PNRRG's willingness to assume the risk of a greater damage award in the hope of victory in the courts, and it states that PNRRG "will be required to pay the damage award" up to $1,000,000 if its plan fails. At the same time, the letter states that PNRRG is "acting in every way possible to protect Dr. Davoudlarian in this matter" and, referring

The damages-only retrial in the Krombein suit resulted in a verdict of $1.5 million, which the trial court reduced to the $1 million cap. Slenker began the appeals process. He advised PNRRG of the necessary amount of the appeal bond and of the procedure to follow in perfecting the appeal. PNRRG sent Slenker a cashier's check in the amount of $1.175 million, made out to the clerk of the Virginia court, to be posted with the court. PNRRG stated that it intended to substitute an appeal bond for the check, but this was never done.[2] An appeal was perfected with the Virginia Supreme Court.

During the pendency of the appeal, PNRRG was declared insolvent by the Louisiana Nineteenth District Court in East Baton Rouge Parish. Pursuant to Louisiana law, the Commissioner was appointed the liquidator of PNRRG. The Commissioner hired Louisiana attorneys, including outside lawyers Ossie Brown and Rolfe McCollister, to help coordinate the liquidation. Ossie Brown sent Slenker and SBJJ a letter requesting help in having the Louisiana liquidation and stay orders domesticated in Virginia, but there was no response. SBJJ partner John Brandt did file a motion to stay proceedings in another Virginia malpractice case involving a PNRRG insured, but there was no such motion in the Krombein suit.

---

to a prior conversation between Meehan and Slenker, that "there is now no personal exposure in this matter."

[2] The parties contest the purpose of the $1.175 million check. The Commissioner claims that PNRRG posted the money solely as an appeal bond. Thus, once any appeal was completed, PNRRG expected the money to be returned. Slenker claims that the money posted was to be used to protect Davoudlarian from any form of exposure in the Krombein matter, without regard to any appeal, pursuant to his policy and to the commitment reflected in the Meehan letter. There is conflicting evidence on this fact issue. Notably, Terry Pierce, a PNRRG claims representative involved in the decision to send Slenker the money, testified at trial that the money was not limited to use as an appeal bond and was not to be returned once the appeal was resolved, but instead was committed to protect Davoudlarian from any form of liability regarding the Krombein matter.

-3-

Ossie Brown also sent Slenker a letter (the "Letter") requesting certain information. The Letter was a form sent to all attorneys nationwide representing PNRRG insureds. SBJJ was to retype the Letter on its own stationary, sign it, and return it to Ossie Brown, along with certain requested information, in order to receive payment for fees and expenses incurred in representing PNRRG insureds. The first sentence of the Letter stated: "By means of this letter, we wish to advise you that we will represent you in those matters pending in this jurisdiction in which Physicians National Risk Retention Group in liquidation has been made a party defendant." Unlike Louisiana, but like nearly all other states, Virginia is not a direct action state: the insurer is not a party to lawsuits filed against its insureds. Therefore, neither the Commissioner nor PNRRG was ever a party to a Virginia lawsuit defended by SBJJ. When Slenker saw the Letter, in April 1992, he wrote on the cover page that he did not understand what the Letter referred to, that he did not represent the Commissioner, and therefore that he saw no reason to respond. Slenker did not communicate these sentiments to the Commissioner or his attorneys.

In a May 1992 letter to the Commissioner, Slenker noted that SBJJ "has for consideration a request . . . that we sign a contract with you concerning representation" of physicians insured by PNRRG. Slenker complained that SBJJ had not been paid for its existing work on behalf of those physicians, despite repeated assurances to the contrary from Ossie Brown and others. Slenker expressed displeasure at the fact that SBJJ was now required to "sign the contract" in order to receive any payment. Slenker concluded that it would "enhance the prospects of a contractual relationship" if the Commissioner promptly paid all submitted invoices. As it stood, Slenker could not recommend that SBJJ sign the Letter.

On June 5, 1992, the Supreme Court of Virginia reversed and vacated the trial court's

judgment in *Krombein v. Davoudlarian*. The case was remanded for a new trial on all issues. Krombein's counsel, Brian Shevlin, soon sent Slenker a letter expressing a belief that it was in both Krombein's and Davoudlarian's interests to keep the bond in place. Slenker did not inform the Commissioner or his attorneys of that correspondence. At the same time, the Commissioner and his attorneys knew that the $1.175 million was in the Virginia court by November 1991, but took no steps to assert or protect any interest the Commissioner believed he had in the money.

On July 21, 1992, SBJJ returned the retyped Letter to the Commissioner. The Letter was signed by John Brandt for SBJJ. In the Letter, SBJJ agreed that all invoices and receipts had to be submitted monthly for approval by the Commissioner's office and by the Louisiana court in charge of the liquidation. The terms of the Letter were retroactive to the date of the liquidation. Brandt's cover letter noted that the "letter of intent" was "regarding our representation of certain Physician's National insureds." It added that SBJJ looked forward to immediate payment of its outstanding expenses and fees.

On October 15, 1992, Slenker talked to McCollister, who was in charge of coordinating the liquidation in states east of the Mississippi River. Slenker and McCollister discussed the $1.175 million bond. McCollister stated that the Commissioner wanted the money returned to Louisiana. Slenker told McCollister that Davoudlarian would object to that, and that Davoudlarian wanted the case resolved. Slenker informed McCollister that a new trial was set for May 1993 and that Krombein's settlement demand was $800,000. Beyond that, the content of the conversation is disputed. Slenker claims that he informed McCollister that he represented only Davoudlarian and that he could never participate in any effort to remove the money because it would be contrary to his client's interest. McCollister claims that Slenker said that he could not involve himself in a struggle

between the interests of Davoudlarian and the Commissioner, and had the impression that Slenker would look into getting the bond released and get back to him. Neither the Commissioner nor any of his attorneys took any action to seek a turnover of the funds.

By November 5, 1992, Slenker and Shevlin had agreed to settle the Krombein lawsuit for $700,000. Slenker did not inform the Commissioner of this agreement or seek the Commissioner's approval, even though Davoudlarian's original insurance policy granted PNRRG the right to approve any litigation settlement. On November 5, a hearing was held in the Virginia trial court on Krombein's motion to release the $700,000 from the money held by the court to fund the settlement. Slenker did not join the motion but, stating that he was required to follow Davoudlarian's wishes, did not oppose it. Slenker never informed the Commissioner of the hearing, although he did inform the court that PNRRG was in liquidation. The court entered an order releasing the $700,000.

Two years later, the Commissioner filed the instant lawsuit against Slenker and SBJJ in Louisiana state court. While the complaint is not entirely clear, the Commissioner appeared to allege that Slenker's conduct constituted: 1) attorney malpractice; 2) a breach of the fiduciary duty of loyalty the Defendants owed the Commissioner as a client; 3) a breach of the fiduciary duty Slenker assumed by receiving the $1.175 million, in that Slenker converted or alienated the $700,000 to effect the unauthorized settlement; 4) a breach of contract, as the Letter created a contractual relationship in which the Defendants agreed to represent the Commissioner in the Krombein matter. He claimed $700,000 in damages. Later, over the Defendants' objections, the Commissioner was allowed to amend his complaint to include a fraud claim, alleged solely for the purpose of defeating the Defendants' prescription claim under Louisiana law. The Defendants subsequently added counterclaims for fraud and constructive fraud. The Defendants removed the case to the Middle

-6-

District of Louisiana, then filed a motion to dismiss for lack of personal jurisdiction or, alternately, to transfer the case to the Eastern District of Virginia. The motion was denied. The Defendants also moved for summary judgment at the close of the discovery period, claiming that the Commissioner had not provided evidence sufficient to establish the elements of any of his claims. This motion was also denied. The district court ruled that Virginia substantive law governed the case. The Defendants' motion for summary judgment on the ground that the Commissioner's claims were untimely under Louisiana law was also denied.

The case preceded to trial by jury. At the close of the Commissioner's case-in-chief, the Defendants moved for judgment as a matter of law under Rule 50(a), claiming that the Commissioner had not introduced evidence sufficient to establish: 1) personal jurisdiction over the Defendants; 2) the existence of a duty owed by the Defendants to the Commissioner pertaining to the allegations in the complaint; 3) proximate causation of damages; 4) that the Defendants should not prevail on their affirmative defense of contributory negligence. The district court denied the motion.

Defendants renewed their Rule 50 motion at the close of all evidence, and it was again denied. The Commissioner moved for judgment as a matter of law on the Defendants' counterclaims. At that point, the district court questioned the attorneys as to whether it could *sua sponte* grant judgment as a matter of law to the Commissioner on his case-in-chief. The Commissioner immediately moved for judgment under Rule 50. The motion was granted. The Commissioner's motion for judgment as a matter of law on the counterclaims was also granted. Judgment was entered granting the Commissioner the claimed $700,000 in damages.

The Defendants challenge several rulings of the district court: 1) the denial of the motion to dismiss or, alternately, to transfer for lack of personal jurisdiction; 2) the denial of the motion to

dismiss the Commissioner's claims as time-barred; 3) the denial of the Defendants' motion for summary judgment based on the Commissioner's alleged failure to establish his claims; 4) the denial of the Defendants' Rule 50 motion and 5) the grant of Rule 50 judgment as to all issues to the Commissioner. We consider the Defendants' challenges in turn.

II

A

The Defendants first claim that the district court erred in declining to dismiss or transfer for lack of personal jurisdiction over them in Louisiana. We review *de novo* the district court's exercise of jurisdiction over the Defendants. *See World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996). As the Louisiana long-arm statute reaches the limits of the Due Process Clause, the relevant inquiry is whether the exercise of jurisdiction over the Defendants was constitutional. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant if: 1) that defendant has "minimum contacts" with the forum state; and 2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (internal citations omitted).

The Defendants filed their motion to dismiss for lack of jurisdiction well in advance of trial. To defeat dismissal, the Commissioner was required only to present facts sufficient to constitute a *prima facie* case of personal jurisdiction. *See Bullion v. Gillespie*, 893 F.2d 213, 217 (5th Cir. 1990). Factual conflicts had to be resolved in the Commissioner's favor in considering the motion to dismiss. *See id.* In light of this standard, we agree with the district court's decision to deny the Defendants' pretrial motion to dismiss, as the Commissioner established a *prima facie* case that personal

-8-

jurisdiction over the Defendants in Louisiana comported with due process.

As the district court found, SBJJ signed and sent to the Commissioner in Louisiana the Letter, by which it agreed to represent the Commissioner in certain cases. In the Letter, SBJJ agreed that its monthly fee requests would be submitted not only to the Commissioner, a state official, but also to the Louisiana state court handling the liquidation of PNRRG, for which the Commissioner was acting as receiver.[3] The Letter agreement was finalized in Baton Rouge when the Commissioner and the Louisiana court approved it. Finally, the Defendants actually submitted expense statements to the state court over a period of time. They received payment as to expenses in the Krombein case, and as to expenses and fees in other cases.

In light of this evidence, we agree with the district court's decision that the Commissioner had made a *prima facie* showing that the Defendants had "minimum contacts" with Louisiana. First, the Commissioner adequately showed that his causes of action related to the Defendants' contacts with Louisiana, such that the Commissioner had only to make a *prima facie* showing of specific, as opposed to general, jurisdiction.[4] Moreover, the Letter and the Commissioner's related evidence made a *prima facie* showing that the Defendants availed themselves of the benefits of the liquidation

---

[3] As noted above, SBJJ was required to sign the agreement in order to receive payment for fees and expenses from the Commissioner.

[4] First, the Commissioner claimed that the Letter, which was perfected in and contemplated performance in Louisiana, created an attorney-client relationship which the Defendants later breached through malpractice. Second, the Commissioner claimed that Slenker breached the fiduciary duty he assumed by accepting the $1.175 million when his conduct "converted" the bond. As the district court noted, the Commissioner alleged that Slenker had received specific instructions from the Commissioner's Louisiana attorneys to have the bond released and returned to Louisiana. Finally, the Commissioner alleged a breach of the Letter agreement itself. Clearly, the district court correctly found that the Commissioner made a *prima facie* showing that "this action arises in substantial part from defendants' contacts with [Louisiana]".

proceeding on a reasonably continuous basis. *See Ruston Gas,* 9 F.3d at 419 ("The 'minimum

contacts' prong, for specific jurisdiction purposes is satisfied by actions, or even just a single act, by

which the non-resident defendant 'purposely avails itself of the privilege of conducting activities

within the forum state, thus invoking the benefits and protections of its laws.'") (citing *Burger King*

*Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Considering

another formulation of the minimum contacts test, resolving all factual inferences in the

Commissioner's favor, we agree that the Defendants' contacts with Louisiana were sufficient, and

sufficiently legal in nature, that they "should [have] reasonably anticipated being haled into court"

there. *See id.* (citing *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559,

62 L. Ed. 2d 490 (1980)).[5]

Resolving all factual issues in the Commissioner's favor also leads us to agree that dismissal

was not proper on the grounds that jurisdiction offended traditional notions of "fair play and

substantial justice." First, the Commissioner is a state official. Second, the Defendants allegedly

solicited the benefits of the state court liquidation proceedings in addition to forming fiduciary

relationships with the Commissioner. Third, the Commissioner alleged inequitable misconduct on the

part of the Defendants. Considered together, and given the *prima facie* showing of minimum

contacts, we agree with the district court's pretrial decision not to dismiss for lack of personal

jurisdiction.

Therefore, the district court correctly concluded that "the jurisdictional issues are intertwined

---

[5] While the Defendants disputed whether the Letter agreement applied to the Davoudlarian/Krombein litigation, or indeed to any litigation the Defendants were actually involved in, we agree with the district court that this presented a disputed fact to be resolved at trial. Such a disputed fact could not defeat personal jurisdiction on a motion to dismiss.

with the merits in this case and the issue will ultimately have to be resolved at trial." *See Travelers Indemnity Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986). At trial, the Commissioner was required to prove the contested jurisdictional facts by a preponderance of the evidence. *See id.* (citing *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977)); *Spector v. L Q Motor Inns*, 517 F.2d 278, 284 (5th Cir. 1975) ("The jurisdictional and substantive issues are factually meshed. Therefore, a decision on the jurisdictional issues is dependent on decision of the merits and should have been reserved until a hearing on the merits.").

At trial, however, the district court erred in failing to allow the jury to decide whether the Commissioner had proven the facts necessary to establish jurisdiction. The Defendants reasserted their motion to dismiss for lack of personal jurisdiction at the close of the Commissioner's case. The district court denied the motion, without stating that the Commissioner had proven the contested jurisdictional facts the court's prior order had identified. After the close of all the evidence, the district court took the case from the jury and entered judgment as a matter of law for the Commissioner under Rule 50. The disputed fact questions material to the merits—including the applicability of the Letter to the Krombein matter, the existence of an applicable fiduciary relationship between the Commissioner and the Defendants, and the breach thereof by Slenker in effecting the Davoudlarian settlement—were taken from the jury on the ground that there was "no reasonable basis" for the jury to resolve them in the Defendants' favor. The district court did not make an express ruling as to jurisdiction, although its ruling implicitly found that jurisdiction had been established.

We find that the district court erred in resolving the disputed factual issues—the case should have gone to the jury. The disputed factual issues erroneously resolved by the district court were

dispositive as to jurisdiction as well as on the merits.  As the jury never decided whether Brown had met its burden of proving the jurisdictional facts by a preponderance of the evidence, we lack the necessary findings on which to decide the personal jurisdiction issue.  Jurisdiction remains intertwined with the merits, and on remand both must be decided at a new trial, based on valid jury findings. Therefore, to the extent to which the district court found at trial that personal jurisdiction over the Defendants had been established, we vacate in part the final judgment for the Commissioner and remand for a new trial.[6]

B

Defendants next argue that the district court erred in finding that the Commissioner's claims were not time-barred under Louisiana prescriptive and peremptive law.[7]  We review *de novo* the district court's ruling on prescription.  *See Radford v. General Dynamics Corp.*, 151 F.3d 396, 398 (5th Cir. 1998).

The district court determined that this case was governed by the substantive law of Virginia, and that decision is not contested on appeal.  Louisiana Civil Code Art. 3549, the relevant conflict of law rule, states that, when an action governed by the substantive law of another state (Virginia) would be barred under the Louisiana prescription and peremption law, the action is barred unless: 1)

---

[6]     We reject the Defendants' argument that we should dismiss the case for lack of personal jurisdiction. We therefore go on to discuss the Defendants' other arguments, which likewise are presented as bases for dismissal.  While we decline to dismiss the case, we find that the Defendants' arguments do point to certain errors by the district court which would themselves require further proceedings.  We discuss these errors so that they will be addressed on remand.  We affirm the dismissal of the Defendants' counterclaims for fraud and constructive fraud.

[7]     Prescription and peremption are different periods of limitations under Louisiana law. *See Broussard v. F.A. Richard & Assoc.*, 732 So. 2d 578, 582 (La. Ct. App. 1999).  They differ in that peremption destroys a right of action, as opposed to merely preventing its enforcement, and therefore cannot be interrupted or suspended. *See id.*

the suit is not barred under Virginia law; and 2) maintenance of the action is warranted by "compelling considerations of remedial justice." *See* La. Civ. Code Art. 3549 (1999). The parties agree that the Commissioner's action would not have been barred under Virginia law. Therefore, the Commissioner's action is barred unless: 1) it is otherwise allowed under Louisiana prescription and peremption law; or 2) maintenance of the action is warranted by "compelling considerations of remedial justice."

The district court expressly pretermitted the question of whether the Commissioner's action would be barred under Louisiana prescriptive/peremptive law. It found that the Commissioner could maintain the action under article 3549 because maintenance of the action was warranted by "compelling considerations of remedial justice." We disagree.

"There is no question that the authors of the 'compelling considerations of remedial justice' exception intended it to be used in only the most extraordinary of circumstances." *Landry v. Ford Motor Company*, 1996 WL 661052, at *3 (E.D. La. Nov. 12, 1996). The 1991 Revision Comments to Article 3549 explain that the "compelling circumstances" provision is taken from the Restatement (Second) of Conflict of Laws and that:

> The examples given by the Restatement are pertinent to the application of this provision and illustrate its exceptional character. These examples refer to cases where "through no fault of the plaintiff an alternative forum is not available as, for example, where jurisdiction could not be obtained over the defendant in any state other than the forum or where for some reason a judgment obtained in the other state having jurisdiction would be unenforceable in other states, [and] . . . also situations where suit in this alternative forum, although not impossible would be extremely inconvenient for the parties." Restatement (Second) of Conflict of Laws, 1986 Revisions, § 142 comment f (Supp. March 31, 1987). As might be surmised from the initial phrase of the quotation, none of these examples should be seen as requiring the forum to entertain an action solely because it is time-barred in all or most other states.

La Civ. Code art. 3549, comment (f).

Only one case has found "compelling considerations of remedial justice." *See Smith v. Odeco (UK) Inc.*, 615 So. 2d 407 (La. App. 1993). *Smith* involved one of the situations mentioned in comment (f): Louisiana was the only forum in which suit could be maintained, because it was the only forum in which jurisdiction could be obtained over all the defendants. *See id.* at 409 (expressly relying on the absence of an alternative forum in finding "compelling considerations of remedial justice"). In cases where plaintiffs have litigated their claims in Louisiana by choice, not by necessity, claims of "compelling considerations" warranting maintenance of the suit in Louisiana have been consistently rejected. *See Seagrave v. Delta Airlines, Inc.*, 848 F. Supp. 82, 83-84 (E.D. La.1994) (costs and inconvenience of having to file suit in Virginia after plaintiff moved to Louisiana do not constitute compelling considerations of remedial justice under article 3549); *Skyrme v. Diamond Offshore (U.S.A.), Inc.*, 1994 WL 320928 at *2-*3, (E.D. La. June 30, 1994) (finding no compelling considerations as to Brazilian resident who "desires to litigate this claim in Louisiana as a matter of choice, not necessity"); *Landry*, 1996 WL 661052, at *2 (same); *Amaro v. Marriott Residence Inn*, 1995 WL 91132 (E.D. La. March 1, 1995) (also finding no compelling considerations of remedial justice).

Here, it is clear that the Commissioner could have sued in Virginia rather than Louisiana, and he does not argue to the contrary. The circumstances alleged by the Commissioner—notably that Louisiana was the domicile of PNRRG and the location of the receivership, and that the Commissioner was a state official—are not even analogous to those enumerated in comment (f). Given the provision's "exceptional character," we reject the district court's decision to expand the "compelling considerations of remedial justice" provision to encompass the Commissioner's action. On remand, the district court should first determine whether the Commissioner's suit is barred under

-14-

the applicable Louisiana prescriptive and peremptive law.[8]

C

Finally, the Defendants challenge the denial of their Rule 50 motion and the grant of judgment under Rule 50 to the Commissioner.[9] We affirm the grant of judgment as a matter of law to the Commissioner on the Defendants' counterclaims. Otherwise, we agree with the denial of the Defendants' Rule 50 motion but find erroneous the judgment as a matter of law to the Commissioner, because each of the Commissioner's claims should have gone to the jury.

We review *de novo* the trial court's ruling on a motion for judgment as a matter of law under Rule 50(a). *See Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 382 (5th Cir. 1998). Such

---

[8] The issue of whether Louisiana law bars the Commissioner's suit was pretermitted by the district court. Therefore, no relevant findings were made. Moreover, the issue was not adequately briefed to us. Accordingly, on remand the district court should determine in the first instance which Louisiana prescriptive or peremptive law applies to the Commissioner's claims and whether, under the applicable law, those claims are time-barred. A new trial is necessary only if the district court determines that one or more of the Commissioner's claims are not time-barred under the applicable Louisiana law.

We note that the Commissioner has alleged that, while his action would not have been barred if originally filed in Virginia, it would be barred if filed there now. In *Seagrave*, the same circumstances were found not to constitute "compelling considerations of remedial justice." *See Seagrave v. Delta Airlines*, 848 F. Supp. at 84. The court recognized that, because "compelling considerations" were not present, "article 3549 contemplates the dismissal of the action." *Id.* However, the court chose to transfer the action under 28 U.S.C. § 1404(a) to the Eastern District of Virginia. *See id.*

[9] Defendants also challenge the district court's denial of their motion for summary judgment on the merits. Because a trial followed the denial of summary judgment, we lack jurisdiction to consider the denial of summary judgment. *See Downey v. Denton County, Texas*, 199 F.3d 381, 385 (5th Cir. 1997); *Black v. J.L. Case Co.*, 22 F.3d 568, 570 (5th Cir. 1994) ("Once trial began, the summary judgment motion effectively became moot.") (citing *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 251 n. 9 (5th Cir. 1984)). We can adequately review the legal and factual issues raised by the summary judgment motion in the context of the Defendants' Rule 50 motion. *See Downey*, 119 F.3d at 385.

a judgment should be granted only "when there is not a sufficient conflict in substantial evidence to create a jury question." *Id.*; *see also Reeves v. Sanderson Plumbing Products, Inc.*, — U.S. —, — S. Ct. —, — L. Ed. 2d —, 2000 WL 743663 at *10-*11 (U.S., June 12, 2000) (stating that a court should grant judgment as a matter of law under Rule 50(a) only when, reviewing the entire record, it finds "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party" and adding that "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence") (internal citations omitted). Virginia substantive law governs this case; we review *de novo* the district court's determination of state law. *See Mills v. Davis Oil Co.*, 11 F.3d 1298, 1303 (5th Cir. 1994).

The Commissioner first claims that the Defendants committed legal malpractice. The elements of a legal malpractice claim in Virginia are: 1) an attorney-client relationship; 2) breach of the standard of care; and 3) damages proximately caused by the negligence. *See Carstensen v. Chrisland Corp.*, 442 S.E. 2d 660, 668 (Va. 1994). Generally, expert testimony is required to establish each element. *See Seaward International, Inc. v. Price Waterhouse*, 391 S.E. 2d 283, 287 (Va. 1990) (expert testimony required to establish all three elements of liability for malpractice except where they fall within the common knowledge of the trier of fact) (cited in *Gregory v. Hawkins*, 468 S.E. 2d 891, 893 (Va. 1996)); *Ripper v. Bain*, 482 S.E. 2d 832, 835 (Va. 1997) (same). Unless reasonable minds could not differ, each element is decided by the finder of fact. *See Gregory*, 468 S.E. 2d at 475; *Ripper*, 482 S.E. 2d at 835-36; *Heyward & Lee Constr. Co. v. Sands, Anderson, Marks & Miller*, 453 S.E. 2d 270, 272 (1995).

There is a substantial conflict in evidence as to whether an attorney-client relationship was formed between the Commissioner and the Defendants that covered the Davoudlarian/Krombein

matter. Conflicting expert testimony (and substantial other conflicting testimony) was presented on this point.[10] Moreover, resolution of the issue involves contested facts, such as the scope of the Letter agreement and the content of the conversations between Slenker and McCollister. Clearly, the question of whether an attorney-client relationship was formed should have gone to the jury.[11] For essentially the same reasons, the question of whether, assuming an attorney-client relationship, the Defendants breached the applicable standard of care was also a jury question.[12]

---

[10]     The district court apparently attempted to prevent expert testimony as to whether an attorney-client relationship existed between the Defendants and the Commissioner, believing that such testimony would "impinge upon the jury's determination of that fact." This was plain error. *See, e.g., Gregory*, 468 S.E. 2d at 893; *Ripper*, 482 S.E. 2d at 835. However, the expert testimony was allowed as to whether the applicable standard of care was breached, and it clearly showed a conflict as to the existence of an attorney-client relationship as well.

[11]     Slenker argues that no attorney-client relationship could have existed because, under the ethical rules of Virginia, Slenker was precluded from owing a duty to a party whose interests conflicted with those of Davoudlarian, his client. We disagree, insofar as this is claimed as a defense to a malpractice claim against Slenker. Slenker has not shown that Virginia law prohibits a lawyer from representing an insured and an insurance company simultaneously. But we need not rely on this point. An attorney-client relationship is formed when the advice and assistance of an attorney is sought and received. *See Carstensen*, 442 S.E. 2d at 668; Va. Sup. Ct. Rules, Part 6, § 1(B) ("Generally, the relation of attorney and client exists . . . whenever he furnishes to another advice or service under circumstances which imply his possession and use of legal knowledge or skill."). Accepting the Commissioner's allegations, an attorney-client relationship may have existed between the Commissioner and the Defendants as to the Krombein matter. Slenker may have placed himself in an untenable ethical position in which he was unable to reconcile his conflicting obligations to Davoudlarian and the Commissioner. But, reading the evidence in the light most favorable to the Commissioner, Slenker may have created this ethical dilemma, essentially by failing to timely take the ethically required steps to deal with the nascent conflict and by not adequately communicating with the Commissioner. The dilemma therefore cannot insulate Slenker from a suit for malpractice. The cases cited by Slenker, which establish only that Slenker owed Davoudlarian all the fiduciary duties a lawyer owes a client, are not to the contrary. We reject the Defendants' claim that Virginia public policy provides a defense to the first element of the Commissioner's legal malpractice claim.

[12]     Notably, the Commissioner claims that Slenker breached his duty when he failed to at least inform the Commissioner of the imminent release of the $700,000. Slenker responds that he had clearly informed the Commissioner that he did not represent him, but rather represented only Davoudlarian. Slenker adds that, even if he would otherwise have notified the Commissioner as a

-17-

Defendants argue that there is not sufficient evidence as to proximate cause for the malpractice claim to go to the jury. Although it is a close question, we decline to find that the claim should be dismissed for inadequate evidence of proximate cause.[13] Therefore, that issue also should

_____

courtesy, his obligation was to Davoudlarian, his client, and any action other than that he took would have itself violated that primary duty. Both claims have sufficient legal and factual support that the breach issue should have gone to the jury.

[13]     Defendants emphasize that the Commissioner provided no expert evidence as to proximate cause. As the Defendants also note, the district court erroneously failed to require the Commissioner to prove proximate cause by expert testimony. In fact, the district court *forbade* the Commissioner from presenting expert testimony as to proximate cause, claiming that such an expert "would be on an issue of law, and you are looking at the [only] legal expert." Given the district court's error, the lack of expert testimony as to proximate cause cannot be used to dismiss the Commissioner's claim.

Virginia requires a "trial within a trial" to show proximate cause as to a legal malpractice claim. *See White v. Moreno*, 452 S.E. 2d 856, 858 (Va. 1995). Therefore, the Commissioner can recover only if he can show that, but for the Defendants' malpractice, less than $700,000 would have been spent (including attorney's fees) in resolving Davoudlarian's claim. *See id.*; *Stewart v. Hall*, 770 F.2d 1267, 1269 (4th Cir. 1985). Rolfe McCollister testified that, had Slenker not committed malpractice, the Commissioner could have obtained release of the $1.175 million from Virginia. While there is opposing evidence in the record, the Commissioner's claim that the money was solely an appeal bond, and that Davoudlarian's policy stated that PNRRG had to approve any settlement, supports McCollister's testimony. If he can show the money would have been released, the Commissioner need not show success in a third appeal of the Krombein suit, so long as he showed that in liquidation the claims of insureds were paid at fractional value. Even assuming the money would have remained in Virginia, Gene Broussard testified that the Commissioner intended to pursue the Krombein suit to a third trial and had indications, both from the Defendants and from internal case analysts, that that trial would have led to a defense victory or verdict far less than $700,000. While this is also contested, the fact that the $1 million verdict was reversed and that the original verdict was for $10,000 render Broussard's claim not insubstantial. In sum, there is sufficient evidence that, assuming that Slenker breached a duty to the Commissioner, that breach proximately damaged the Commissioner to create a jury question.

To the extent to which the Commissioner argued, and the district court found, that the Commissioner was not required to show proximate causation of damages as part of his malpractice claim, we disagree. The Commissioner argues that this is a liquidated damages case because Slenker's actions *prevented* the Commissioner from pursuing the third trial in the Krombein suit and thereby vindicating his position. The Commissioner presents no case law to support his claim that this circumstance relieves him of the need for a trial within a trial. The available case law is to the

-18-

have gone to the jury. Finally, the Defendants raised a contributory negligence defense to the Commissioner's malpractice claim. In Virginia, contributory negligence is a complete defense to a legal malpractice action. *See Lyle, Siegel, Croshaw, & Beale, P.C. v. Tidewater Capital Corp.*, 457 S.E. 2d 28, 32 (Va. 1995). The Defendants presented sufficient evidence that the Commissioner was negligent and this negligence proximately caused the release of the $700,000 for their contributory negligence defense to have also gone to the jury. Therefore, on remand a new trial should be held on the Commissioner's malpractice claim.

The Commissioner also claims that Slenker breached the fiduciary duties he assumed as the Commissioner's agent or trustee by accepting the $1.175 million and placing it with the Virginia court. Under Virginia law, a fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interest of the one reposing the confidence." *Allen Realty Corp. v. Holbert*, 318 S.E. 2d 592, 595

---

contrary. In *Allied Productions, Inc. v. Duesterdick*, 232 S.E. 2d 774 (Va. 1977), plaintiff claimed that its attorney entirely failed to defend a suit, leading to a default judgment. *See id.* at 775. The Virginia Supreme Court nevertheless stated that plaintiff needed to prove proximate cause by showing that its underlying position had merit. *See id.* ("If an attorney, in disregard of his duty, neglects to appear in a suit against his client, with the result that a default judgment is taken, it does not follow that the client has suffered damage, because the judgment may be entirely just, and one that would have been rendered notwithstanding the efforts of the attorney to prevent it.") (internal citation omitted); *Stewart*, 770 F.2d at 1269 (in a malpractice action involving a default judgment, "[t]he alleged negligence is actionable only upon a determination that the underlying claim would have been resolved differently but for the attorney's negligence") (citing *Allied Productions*). To the extent to which the Commissioner argues that, because the Defendants' actions allegedly involve a conflict of interest and therefore a breach of the fiduciary duty of loyalty, the proximate cause requirement is inapplicable, the Commissioner fails to support this argument with any precedent. Moreover, the limited available case law is again to the contrary. *See Sampang v. Detrick*, 826 F. Supp. 174, 176 (W.D. Va. 1993) (holding that a malpractice claim based on counsel's alleged conflict of interest requires a showing of proximate cause and dismissing because plaintiff's guilty plea was the proximate cause of his conviction). Therefore, insofar as the Commissioner's claims are based on the Defendants' legal malpractice, he must show proximate causation as to damages.

(Va. 1984) (internal citation omitted). One can become a fiduciary "because of money or property intrusted to him." *Id.* (internal citation omitted). Moreover, "it is well-settled that an agent is a fiduciary with respect to the matters within the scope of his agency." *See Byars v. Stone and Gilmer, Administrators*, 42 S.E. 2d 847 (Va. 1947).[14] The existence of a fiduciary duty, and the breach thereof, are both questions of fact. *See Allen Realty*, 318 S.E. 2d at 595.

It is clear that Slenker received the check for $1.175 million from the Commissioner and deposited it with the Virginia court as part of perfecting Davoudlarian's appeal. The extent to which Slenker had control over the money is disputed, as are the purposes for which the money was to be used. However, while there is contravening evidence, the Commissioner has presented evidence that Slenker received the money knowing it was solely for use as an appeal bond, and after the Virginia Supreme Court's decision was instructed that the Commissioner wanted the money returned, yet participated in the unauthorized release of the money for a different purpose which was contrary to the Commissioner's interests. A fiduciary cannot act contrary to his principal's interest and, moreover, "must tell the principal about anything which might affect the principal's decision whether or how to act." *Allen Realty*, 318 S.E. 2d at 595 (internal citation omitted). Therefore, the Commissioner's claim that Slenker breached a fiduciary duty that he assumed as agent or trustee with

---

[14] It does not appear that Virginia law bars a client from suing his attorney for a breach of fiduciary duty without regard to malpractice, so long as there is a basis for the fiduciary duty outside of the attorney-client relationship. *See Weidman v. Babcock*, 400 S.E. 2d 164, 165-66 (Va. 1991) (discussing action for breach of fiduciary duty against former attorney); *FDIC v. Cocke*, 7 F.3d 396, 398, 403 (4th Cir. 1993) (discussing separate claims under Virginia law against attorney for savings and loan for malpractice as counsel and for breach of fiduciary duty as director of savings and loan); *cf. In re Palumbo Family Limited Partnership*, 182 B.R. 447, 470 (Bankr. E.D. Va. 1995) (noting that, under Virginia law, improper handling of client funds "may give rise to a breach-of-fiduciary duty claim"). At any rate, a jury has not established that Slenker had an attorney-client relationship with the Commissioner with regard to the Krombein matter.

regard to the $1.175 million should have gone to the jury.[15]

Finally, the Commissioner claims that the Defendants are liable for breach of contract, arguing that the Letter constituted an agreement to represent the Commissioner in the Krombein matter. Submitting a written contract to the jury for interpretation is proper when the language is ambiguous. *See Foreign Mission Board of the Southern Baptist Convention v. Wade*, 409 S.E. 2d 144, 146 (Va. 1991). "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Doswell Limited Partnership v. Virginia Electric and Power Co.*, 468 S.E. 2d 84, 88 (Va. 1996).

The Letter's first, and most important, sentence reads: "By means of this letter, we wish to advise you that this firm is representing you in certain matters pending in this jurisdiction [Virginia] in which [PNRRG] has been made a party defendant." This sentence itself is ambiguous. The statement that PNRRG has been made a party defendant in certain matters pending in Virginia is clear, but erroneous. At the same time, the sentence affirmatively states that SBJJ is representing the Commissioner in matters pending in Virginia. The meaning of the sentence is unclear in light of the error. Given that the Letter is ambiguous, extrinsic evidence was properly admitted as to whether it represented a contract by the Defendants to represent the Commissioner that covered the

---

[15] The fiduciary duty claim is separate and distinct from any legal malpractice claim because it arises from duties Slenker assumed with regard to the $1.175 million in particular, not from his general fiduciary duties as an attorney. We can find no authority suggesting that the Commissioner must prove proximate cause, in the sense of showing that he would otherwise have spent less than $700,000 on Davoudlarian's claim, as an element of its prima facie case for this alleged breach of fiduciary duty. However, noting that the Commissioner benefitted from the settlement of the Krombein suit, we leave it to the district court to, in the first instance, determine what damages are recoverable if the Commissioner's claim proves successful. *Cf. Boston Children's Heart Foundation v. Nadal-Ginard*, 73 F.3d 429, 434 (1st Cir. 1996) (discussing offset based on *quantum meruit* of damages for breach of fiduciary duty).

Davoudlarian matter. *See Nehi Bottling Co. v. All-American Bottling Co.*, 8 F.3d 157, 162 (4th Cir. 1993) (applying Virginia law).[16]

Given that parol evidence was properly admitted, "[i]f, from the evidence presented, reasonable people could draw different conclusions as to reasonable expectations of the parties, the question of the meaning of the contract is properly presented to a jury for resolution." *Foreign Mission Board*, 409 S.E. 2d at 146 (internal citations omitted); *see also Nehi Bottling*, 8. F.3d at 162 (same). Here, conflicting evidence was presented as to whether the parties would reasonably have believed that the Defendants were representing the Commissioner in the Krombein matter, and reasonable people could draw different conclusions from that evidence. Therefore, the issue of whether the Letter constituted a contract by which the Defendants agreed to represent the Commissioner, and whether the Defendants breached that contract, should have been submitted to the jury.

The Commissioner's breach of contract claim is that the Letter constituted a contract to represent the Commissioner in the Davoudlarian matter which the Defendants breached by failing entirely to represent the Commissioner. In light of the nature of the breach of contract claim, it is apparent that the Commissioner must make the same showing of proximate cause with regard to this claim as with regard to the legal malpractice claim. In Virginia, legal malpractice is seen as a type of

---

[16]    Alternately, the district court found that extrinsic evidence should be admitted because both parties were "laboring under some form of mistake." We agree. Mutual mistake is an exception to the parol evidence rule in Virginia. *See Fox-Sadler Co. v. Norris Roofing Co.*, 327 S.E. 2d 95, 109-110 (Va. 1985). Here, the Letter contained a facial mistake which rendered it illogical and unclear. The Letter was drafted by the Commissioner, but the Defendants evidenced their agreement by retyping it on their own stationary, signing it, and sending it to the Commissioner. Slenker himself apparently realized the error in the Letter, but never informed the Commissioner of the mistake, and the Defendants agreed to the Letter as it was; objectively, the Defendants were as mistaken as the Commissioner. The mistake warranted the admission of parol evidence.

breach of contract.  *See Timms v. Rosenblum*, 713 F. Supp. 948, 954 (E.D. Va. 1989) ("Legal malpractice claims in Virginia sound either in contract or in tort."); *Oleyar v. Kerr*, 225 S.E. 2d 398, 400 (Va. 1976) (holding that "an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract and thus governed by the statute of limitations applicable to contracts"); *Hunter v. Massie*, 1995 WL 1055734, at *2 (Va. Cir. Ct. 1995) (explaining that, under *Kerr*, the attorney-client relationship arises from an express or implied contract, such that "the lawyer would not have owed the client a duty but for the contractual relationship between them").  Whether the action is brought in contract or tort, the same proximate cause standard applies.  *See Hendrix v. Daugherty*, 457 S.E. 2d 71, 73-74 (Va. 1995) (affirming demurrer to legal malpractice action alleging negligence and breach of contract for failure to allege proximate causation; plaintiffs "failed to allege that they would have prevailed in the underlying action but for the negligence of the defendant attorneys"); *Locke v. Johns-Manville*, 275 S.E. 2d 900, 904 (Va. 1981) ("The essential elements of a cause of action, whether based on a tortious act or breach of contract, are . . . (3) harm or damage to the plaintiff as a proximate consequence of that violation or breach"); *Cullen v. Cook*, 1992 WL 55184, at *4 (W.D. Va. 1992) ("An action for legal malpractice may plead either in tort or contract.  However, under either theory, the essential elements of a cause of action require harm or damage to the plaintiff.") (citing *Locke*, 275 S.E. 2d 904; other internal citations omitted); *see also E.I. DuPont Denemours & Co. v. Universal Moulding Products Corp.*, 191 Va. 525, 572 (Va. 1950) (holding that, to recover for breach of contract, "[t]he breach of contract must be the direct and proximate cause of the damage").  Therefore, the discussion of proximate cause as to the legal malpractice claim applies equally here, and the issue of whether, assuming that a breach of contract occurred, that breach proximately

damaged the Commissioner should have been submitted to the jury.

In sum, we agree with the district court's denial of the Defendants' motion for judgment as a matter of law under Rule 50(a), but find erroneous the Rule 50(a) judgment entered by the district court for the Commissioner.[17]  On remand, a new trial should be held on each of the Commissioner's claims.

### III

To summarize, we first vacate the district court's judgment that, as a matter of law, personal jurisdiction over the Defendants in Louisiana comported with due process.  We remand for this issue to be determined on retrial, based on valid jury findings.  Second, we find that the district court erred in holding that, under article 3549, "compelling considerations of remedial justice" warranted maintenance of this action.  On remand, the district court should determine whether the action is barred under the applicable Louisiana prescriptive and peremptive law.  Retrial is necessary only if the district court finds that some or all of the Commissioner's claims are not time-barred under Louisiana law.  Third, while we agree with the district court's denial of the Defendants' motion for judgment as a matter of law, we find erroneous the district court's judgment under Rule 50(a) for the Commissioner.  On remand, each of the Commissioner's claims should be retried.  We affirm the judgment as a matter of law for the Commissioner on the Defendants' counterclaims.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

[17]  But, as noted above, we affirm the judgment as a matter of law for the Commissioner on the Defendants' claims for fraud and constructive fraud.  Virginia law requires that each element of these claims be proven by clear and convincing evidence.  *See Evaluation Research Corp. v. Alequin*, 439 S.E. 2d 387, 390 (Va. 1994).  Given this burden, the Defendants have not adduced sufficient evidence that the Commissioner knowingly made false statements with the requisite intent to mislead.  *See id.*

REAVLEY, Circuit Judge, specially concurring:

I agree that a fact issue exists whether Slenker, by breach of his fiduciary duty, caused the Commissioner to lose the $700,000. The record establishes a lawyer-client relationship between Slenker's law firm and the Commissioner, but there is a material conflict between the parties about the conversation between them on October 15, 1992. Slenker's testimony is that he made it clear that he would not protect the Commissioner or oppose release of the money.

There is no issue on jurisdiction. See Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999) ("However, when the claim arises from a breach of fiduciary duty based on a failure to disclose material information, the fact that the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material omissions to the forum state.")

Finally, there is no prescription issue. The one-year prescription period of LSA-R.S. 9:5605 only applies to claims against attorneys licensed to practice in Louisiana. A breach of fiduciary duty action is governed by a ten-year prescription period under L.S.A.-C.C. 3499. Gerdes v. Estate of Cush, 953 F.2d 201 (5th Cir. 1992).