EDITH H. JONES, Chief Judge,
dissenting:
With due respect to my colleagues’ conscientious parsing of the law, I dissent from the majority’s interpretation of Iraqi law and the application of La. Civ.Code art. 3549(B)(1) to allow this otherwise time-barred case to proceed under Iraq’s three-year statute of limitations. My concerns can be succinctly stated.
As an initial matter, the majority interprets Coalition Provisional Authority 17 (“CPA 17”) very narrowly. The majority concludes that CPA 17 only applies to contract disputes and that the instant suit sounds in tort. Moreover, the majority dismisses CPA 17 § 18, the section that addresses torts, as “procedural” and “superfluous” to their analysis. In my view, this is an error: CPA 17 was, during its effective period, facially part of Iraqi law[1] *551 and deserves to be interpreted appropriately.
Because CPA 17 is a part of Iraqi law, the law of the place of injury under La. Civ.Code art. 3543, a strong argument exists for applying only Louisiana law to this controversy. The majority opinion notes that Arkel is immune from Iraqi laws and Iraqi legal process by the terms of CPA 17 §§ 4.2 and 4.3. The immunity extends, respectively, to “matters relating to the terms and conditions of their Contracts” and “with respect to acts performed by them pursuant to the terms and conditions of a Contract.” The majority also cites CPA 17 § 18, which states that:
Except where immunity has been waived in accordance with Section 5 of this Order, third-party claims including those ... for personal injury, illness or death ... arising from or attributed to acts or omissions of ... Contractors or any person employed by them for activities relating to performance of their Contracts, whether normally resident in Iraq or not and that do not arise connection with military operations, shall be submitted and dealt with by the Sending State whose personnel ... are alleged to have caused the claimed damage, in a manner consistent with the Sending State’s laws, regulations and procedures.
Though the majority summarily dismisses this section with little analysis, I understand this section to mean that all “matters relating to the terms and conditions of [contractors’] Contracts” are exempt from Iraqi law and are to be dealt with by the Sending States (which, in this context, means countries other than Iraq). These provisions, I believe, exempt contractors like Arkel from Iraqi law. I emphasize that exemption from Iraqi law does not necessarily mean immunity from liability, because of the requirement that tort claims be resolved “consistent” with the Sending State’s “regulations.” The scope of Arkel’s immunity from liability, if any, remains to be determined.
Three objections may be raised to this conclusion. First, the majority endorses the district court’s conclusion that whatever immunity is provided by CPA 17 is limited to matters dealing with terms and conditions of the contracts. The district court, however, overlooked CPA 17 § 18. Moreover, this tort case will necessarily “relate to” the terms and scope of Arkel’s contract for “Operation and Maintenance for Power Generation Aboard Camp Taqqadim, Iraq.” Whether Arkel was responsible for the improper grounding of the generator depends, at the outset, on its contract.
Second, the majority asserts that CPA 17 “does not create an immunity from Iraqi laws relating to tort claims brought in federal court in the United States.” But in my view, the whole point of § 18 is to substitute the Sending State’s substantive laws for those of Iraq. Read in the majority’s fashion, the courts and “processes” of Iraqi law are excluded from handling these cases under Iraqi law, but American courts are not. If this odd result was intentional, it would seem to embody a high form of cultural imperialism— distrusting the Iraqi people’s legal institutions while favoring American judges’ application of the Iraqi laws. This reading of § 18 is unnecessary. To say that the tort claims shall be handled “consistent with the Sending State’s laws” need not include the Sending State’s conflict of laws reference back to Iraq. Such an interpretation preserves the evident intent to apply the domestic law of Sending States to their contractors operating in Iraq. As has been noted, several courts have applied American substantive law to tort and contract claims governed by CPA 17. Harris, 796 F.Supp.2d at 668 (concluding that *552 American state tort law, not Iraqi law, applied to a tort action resulting from a soldier being electrocuted while showering in Iraq by a faulty water pump maintained by an American company); Dalkilic, 516 F.Supp.2d at 1192 (applying California contract law to a contract for work performed in Iraq).
Third, the majority claims that CPA 17 § 18 is merely procedural and superfluous to their analysis and does not substitute Louisiana substantive law for Iraqi law. Such a reading of § 18 would make the last clause of the section surplusage. The section states that certain tort claims “shall be submitted and dealt with by the Sending State.” This provision takes jurisdiction over certain tort claims out of the hands of Iraqi courts and places it with the sending state. The last clause of the section states that the claims shall be dealt with “in a manner consistent with the Sending State’s laws, regulations and procedures.” If the majority is correct and this last clause has no bearing on what law the Sending State’s court should apply, then this last clause would never be used by any court. The Iraqi courts would not reach this question because the case is automatically submitted to the sending state. The Sending State’s court would not reach it because it is merely procedural and trumped by the Sending State’s choice of law analysis. The better reading that gives meaning to all the words in the section is that Iraqi law is fully displaced by the “laws, regulations and procedure” of the sending state. This substitution would mean that a Louisiana choice of law analysis could not reach back to the presubstitution Iraqi law to take advantage of a longer statute of limitations.
Even if the majority is correct that Iraqi substantive law applies to this case (notwithstanding CPA 17), I cordially disagree with their interpretation that under La. Crv.Code art. 3549(B)(1), there were “compelling considerations of remedial justice” requiring the displacement of Louisiana’s prescription period by Iraq’s more liberal statute. That Iraqi courts were “unavailable” for this litigation is not the end of the discussion. While I cannot fault most of the majority’s discussion of the authorities, I note that in Brown v. Slenker, 220 F.3d 411, 420-21 (5th Cir.2000), this court described Smith v. Odeco, on which the majority rely, as reflecting the fact that Louisiana was the only forum in which plaintiffs suit could be maintained. The Brown plaintiff, on the other hand, chose to litigate in Louisiana rather than in the defendant’s residence in Virginia. Id. This court stated, “In eases where plaintiffs have litigated their claims in Louisiana by choice, not by necessity, claims of ‘compelling circumstances’ warranting maintenance of the suit in Louisiana have been consistently rejected.” Id. So holding, this court refused to apply art. 3549 to avail the plaintiff.
In this case, Sergeant Everett’s parents chose, as a matter of convenience, to sue initially in Texas rather than Louisiana. They thus exposed themselves to what the majority describes as Arkel’s “compelling motion to dismiss for lack of personal jurisdiction in Texas.” Yet they knew within three or four months of the accident that their son had been electrocuted and they were informed of the potential involvement of Arkel, a Baton Rouge-headquartered company. They could have filed a timely suit in Louisiana under Louisiana law against Arkel. I would conclude that this chronology did not give rise to compelling circumstances of remedial justice.
I respectfully dissent.

. This conclusion has been accepted by other courts. See, e.g., Harris v. Kellogg, Brown & Root Servs., Inc., 796 F.Supp.2d 642, 652-53 (W.D.Pa.2011) (Iraqi law expert, Professor Haider Ala Hamoudi, reported that CPA 17 was a “valid part of Iraqi law unless repealed” and CPA 17 was repealed on Novemher 17, 2008.); In re XE Servs. Alien Tort Litigation, 665 F.Supp.2d 569, 595 (E.D.Va. 2009) (finding that CPA 17 "was subsequently incorporated into Iraqi Law”); Dalkilic v. Titan Corp., 516 F.Supp.2d 1177, 1192 (S.D.Cal. 2007) (considering CPA 17 to be Iraqi law in a choice of law analysis).