**BAHAMAS PAPER COMPANY, LTD.**
**et al., Plaintiffs,**

v.

**IMPERIAL PACKAGING CORPORA-
TION and Sidney Poland, Defendants.**

**No. 70 Civ. 3291.**

United States District Court,
S. D. New York,
Civil Division.

Feb. 20, 1973.

See also, D.C., 328 F.Supp. 158.

Sandoe, Hopgood & Calimafde by John
M. Calimafde, New York City, for plain-
tiffs; Stephen B. Judlowe, New York
City, of counsel.

Brumbaugh, Graves, Donohue & Ray-
mond by Frederick C. Carver, New York
City, and Willkie, Farr & Gallagher by
Anthony F. Phillips, New York City, for
defendants.

WHITMAN KNAPP, District Judge.

Plaintiffs, in their first cause of ac-
tion, seek royalties allegedly due under
a patent license agreement dated July 12,
1962 between plaintiff Bahamas Paper
Company, Ltd. and defendant Imperial
Packaging Corporation, defendant Im-
perial's obligations under the agreement
having been guaranteed by defendant
Sidney Poland. The patent in question is
United States Letters Patent No. 2,836,-
344, which was issued May 27, 1958 to
Harry F. Gatward, who assigned it to
plaintiff Bahamas, which in turn as-
signed it to plaintiff Paper Products,
Ltd., which in turn assigned it to plain-

tiff Equitable Bag Company, Inc. Plaintiffs' second cause of action seeks damages for alleged infringement of the same patent. Plaintiffs now move, pursuant to F.R.Civ.P. 42(b), for an order granting a separate trial of their cause of action for breach of contract.

Defendant Imperial paid royalties under the above-mentioned agreement until January 1, 1969. On March 26, 1970, Imperial formally challenged the validity of the patent and expressly repudiated the agreement. Notwithstanding its repudiation, Imperial allegedly continued to manufacture and sell products within the scope of the patent, and for several months continued to mark such products with the patent number. The first cause of action seeks to recover royalties accruing between January 1, 1969 and March 26, 1970, when defendant Imperial formally repudiated the contract. The second cause of action seeks infringement damages until the present day.

Defendants' answer alleges that the patent was invalid and had been procured by fraud, and asserts such invalidity and fraud in bar of both causes of action.

The motion for a separate trial is based on the theory that while invalidity is obviously a defense to the second cause of action it is not to the first. Plaintiffs have undertaken, should they prevail in this motion and in their first cause of action, to consent to a dismissal of the remainder of the complaint. They urge that this procedure would obviate the need of a long and complicated trial on the question of patent validity.

Plaintiffs have previously urged their theory that patent invalidity is not a defense to the first cause of action by means of a motion for partial summary judgment. In June of 1971, Judge Bonsal, citing Lear, Inc. v. Adkins (1969) 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 and Painton & Company, Ltd., v. Bourns, Inc. (2d Cir. 1971) 442 F.2d 216, denied that motion (D.C., 328 F.

Supp. 158), and subsequently declined to certify a question to the Court of Appeals. I must therefore first determine whether I am entitled simply to rely on Judge Bonsal's views as to the applicable law or whether I am required to come to my own conclusion. I am persuaded that I cannot avoid coming to my own conclusion. See Dictograph Products Co. v. Sonotone Corp. (2d Cir. 1956) 230 F.2d 131.

As Judge Bonsal observed, the controlling authority is Mr. Justice Harlan's opinion in *Lear*. In that case the Court repudiated the old doctrine that a licensee was estopped, as against his licensor, to challenge the validity of a patent. Recognizing that this doctrine of estoppel had sound basis in state contract law, the *Lear* Court nevertheless concluded that it must give way to a federal policy to encourage actions challenging invalid patents. The Court observed (395 U.S. at 673, 89 S.Ct. at 1912):

> "The decisive question is whether overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts. It seems to us that such a requirement would be inconsistent with the aims of federal patent policy."

In commenting on *Lear*, [Chief] Judge Friendly observed in Painton & Company (442 F.2d at 226):

> "What *Lear* precisely held was that the courts may not enforce a royalty agreement with respect to an invention embodied in an American patent while the licensee was contesting its validity * * *".

As indicated by the passages quoted, *Lear* concerned itself only with abolishing the requirement of paying royalties "during the time" a licensee was actually "challenging patent validity in the courts". Remaining open is the question how much prior to actual court challenge the ultimately protesting licensee

should be relieved of his obligation to pay royalties.

Judge Bonsal ruled in effect, that the licensees' protection was available in any suit by the licensor. Shortly thereafter, Chief Judge Brown of the Western District of Tennessee ruled that the *Lear* doctrine went so far as to permit a licensee to recover royalties actually paid to the licensor. Troxel Manufacturing Co. v. Schwinn Bicycle Co. (W.D.Tenn.1971) 334 F.Supp. 1269. The Sixth Circuit, however, reversed this ruling (465 F.2d 1253). That Court found that the policy of encouraging challenges to invalid patents would not be furthered by permitting an unprotesting licensee to recover royalties paid while enjoying protection of the license. The Court observed (465 F.2d at 1257):

"Rather than stimulating early litigation to test patent validity, such an interpretation of *Lear* would make it advantageous for a licensee to postpone litigation, enjoy the fruits of his licensing agreement, and sue for repayment of royalties near the end of the term of the patent. When a licensed patent is about to expire and the threat of injunction no longer exists, a licensee would have little to lose in bringing an action to recover all the money he has paid in royalties on the ground of the invalidity of the patent. The licensee would have a chance to regain all the royalties paid while never having been subjected to the risk of an injunction. Such an interpretation of *Lear* would defeat one of the expressed purposes of the court in announcing that decision."

■ It seems to me that the rule should be that the licensee is relieved of his obligation to pay royalties the moment he effectively repudiates the license agreement, thus forswearing its "fruits" and exposing himself to the risks of injunction proceedings or other legal action by his licensor.

■ However, neither the record on this motion nor the record that was before Judge Bonsal on the summary judgment application is adequate for a confident finding as to when that precise moment occurred. The plaintiffs' motion will accordingly be disposed of as follows: trial will proceed on the first cause of action, limited to the question of when defendants effectively repudiated the protection of the license agreement. If plaintiffs establish that no such repudiation occurred in time to permit defendants to assert patent invalidity as a defense to the first cause of action, judgment for plaintiff will be entered thereon and the balance of the complaint will be dismissed. Otherwise, a suitable adjournment will be granted to permit the parties to prepare to litigate the validity of the patent.

So ordered.