## FOSTER WHEELER CORPORATION and Foster Wheeler Energy Corporation, Plaintiffs,

v.

## BABCOCK & WILCOX COMPANY, Defendant.

### No. 76 Civ. 1224 (WCC).

United States District Court, S. D. New York.

Sept. 27, 1977.

Harold E. Kennedy, Marvin A. Naigur, New York City (Rothschild, Barry & Myers, Norman J. Barry, Joseph P. Della Maria, Jr., Chicago, Ill., of counsel), Lane Aitken, Dunner & Ziems, Washington, D. C. (Donald R. Dunner, Washington, D. C. of counsel), for plaintiffs.

Bryan & Bollo, P.C., Stamford, Conn. (Roland T. Bryan, Harold E. Drumm, James A. Quinton, Stamford, Conn., of counsel), Sullivan & Cromwell, New York City (George C. Kern, Jr., New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

CONNER, District Judge.

This action, for a declaratory judgment that U.S. patents Nos. 3,834,358 and 3,927,646 owned by defendant Babcock & Wilcox Co. (B & W) are invalid and not infringed by any steam generators which plaintiff Foster-Wheeler Corporation (FWC) has contracted to construct, is before the Court on a welter of motions:

1. The motion of B & W:

   (a) for a partial summary judgment that five steam generators which FWC has contracted to construct are subject to a Settlement Agreement dated September 26, 1973 by which B & W covenanted not to sue FWC for infringement of certain claims of the '646 patent in suit, in consideration of FWC's agreement to pay specified royalties;

   (b) for a separate, expedited trial of the issue whether the claims of the '646 patent cover the aforesaid FWC steam generators;

   (c) for arbitration of the remaining issues pursuant to an arbitration clause contained in the Settlement Agreement; and

   (d) for a stay of all other proceedings herein pending resolution of said issue;

2. Plaintiffs' motion for leave to amend their complaint to add a claim that B & W violated the antitrust laws by the fraudulent procurement and enforcement of the patents in suit and by "tying" the grant of immunity under the '646 patent to the purchase of unpatented materials from B & W; and

3. Plaintiffs' motion to disqualify B & W's counsel on the ground that he is a prospective witness in the case.

A brief summary of the complex factual background of the case will suffice for the disposition of these motions. In August 1968, an interference was declared in the United States Patent Office between applications respectively owned by B & W and FWC covering certain constructions of "once-through" steam generators, in which the supply water is converted to steam in one continuous flow path through the boiler. On September 26, 1973, the interference was settled by an agreement by which, *inter alia*, (1) FWC conceded priority of invention to B & W's assignors; (2) B & W released FCW from any claim of past infringement in consideration of FWC's down payment of $1,200,000 against its undertaking to purchase from defendant $21,000,000 worth of tubular products during the next ten years; (3) B & W covenanted not to sue FWC for infringement of any of the claims then allowed in its application in interference in consideration of FWC's payment of a specified royalty on any steam generator covered thereby for which FWC contracted after October 1, 1973, such royalties to be "due * * * when the contract is made, but payable when the steam generator is sold"—i.e., "when it has been accepted by the customer or when ninety percent (90%) of the price thereof has been received by Foster Wheeler, whichever is earlier"; and (4) it was agreed that "any controversy or claim arising out of the covenant not to sue or the payment thereunder shall be settled by arbitration in accordance with the rules of the American Arbitration Association."

FWC contracted to furnish a number of once-through steam generators after Octo-

ber 1, 1973, but has paid no royalties to B & W thereon. On December 23, 1975, the '646 patent in suit issued on the B & W application in interference; it contained, inter alia, claims 1–4 and 7–9, which had been allowed as of the time of the Settlement Agreement. In early 1976 B & W brought an action against FWC in the United States District Court for the Southern District of Indiana, Indianapolis Division, charging infringement of the two patents here in suit. Shortly thereafter, on March 12, 1976, plaintiffs brought this action for a declaratory judgment of noninfringement and invalidity of the patents. On June 11, 1976, B & W served on FWC a demand for arbitration and on June 25, 1976, FWC advised the American Arbitration Association that it refused to arbitrate because there were then pending "two lawsuits between the parties involving the same subject matter."

On July 9, 1976 FWC moved in the Indiana action for an order permanently enjoining B & W from proceeding in the arbitration and on December 14, 1976, the Indiana court issued such an injunction. Shortly thereafter B & W filed a notice of dismissal of the Indiana action under Rule 41, no answer having been filed therein, and the court so ordered on January 13, 1977.

*I. B & W's motion*

B & W seeks a summary judgment declaring that the five once-through steam generators which FWC allegedly contracted for between October 1, 1973 and March 12, 1976, the date of filing of this action, are subject to the covenant not to sue, and that royalties are accordingly payable thereon.

B & W's reasoning may be briefly summarized as follows: In the Settlement Agreement; FWC conceded that the once-through steam generators it had theretofore contracted for were covered by Count 1 of the interference, which corresponds to Claim 7 of the '646 patent as issued. FWC made of record in the Patent Office before issuance of the '646 patent all of the evidence of invalidity known to it. It never challenged the validity of the '646 patent nor notified B & W of its intention to do so

until it filed this action on March 12, 1977. Under the rule of *Bahamas Paper Co. Ltd. v. Imperial Packaging Corp.*, 58 F.R.D. 355, 177 U.S.P.Q. 440 (S.D.N.Y.1973) and *PPG Industries, Inc. v. Westwood Chemical, Inc.*, 530 F.2d 700, 706 (6th Cir. 1976), until FWC either repudiated the license agreement or took affirmative action to invalidate the patent, it was obligated to pay all royalties which accrued under the agreement and, according to the agreement, the royalties accrued when the boilers were contracted for, even though they were not to be completed and accepted or paid for until after this action was filed.

It follows, according to B & W, that FWC, having received the benefit of the immunity from suit for infringement of the '646 patent, is estopped to challenge its validity at least insofar as concerns its obligation to pay royalties accruing prior to the filing of this action. B & W further urges that, if there is any factual issue respecting the coverage of FWC's once-through boilers by the licensed claims, that issue should be tried separately and first, because a decision in B & W's favor on that issue would render moot all other issues respecting the '646 patent, since B & W seeks only one royalty per patent.

In opposition to the motion, FWC vigorously maintains that it made clear to B & W its intention to challenge the validity of the '646 patent long prior to the filing of this action. In that connection, it points out that B & W, in its Complaint in the Indiana action, filed a month before the New York action, alleged that "Defendant Foster Wheeler * * * has taken the position that the patents are invalid."

At the very least, this creates an issue of fact as to whether FWC had challenged the validity of the '646 patent prior to its filing of this action, and whether that challenge, in the words of the Court in *PPG Industries, supra*, 530 F.2d at 706, was "of the type to prompt an early adjudication of invalidity."

■ This issue of material fact precludes summary disposition, Rule 56(c), F.R.Civ.P.,

so that the motion for partial summary judgment must be denied.

Insofar as concerns the issue whether the patents in suit cover FWC's once-through boilers, the papers filed by FWC raise serious questions. It would appear that a separate trial of this issue may well result in a substantial saving of time and expense. See, e.g., Berkey Photo, Inc. v. Klimsch-Repro, Inc., 388 F.Supp. 586, 587, Para. 4 (S.D.N.Y.1975) and Capri Jewelry, Inc. v. Hattie Carnegie Jewelry, Ltd., 539 F.2d 846 (2d Cir. 1976). The parties will be notified to appear for a conference with the Court within the near future to explore this possibility further.

■ B & W's motion to compel arbitration of the "other issues" is scarcely discussed in its supporting memoranda. Since the Settlement Agreement involved only the '646 patent, the only apparent "issues" referred to are those of validity and coverage of that patent. The Indiana court's injunction against arbitration was based upon "the established rule that public interest in questions of patent validity and infringement renders them inappropriate for determination in arbitration proceedings." The authority cited by the Court in support of that statement, the decision of Judge MacMahon of this Court in Diematic Mfg. Corp. v. Packaging Industries, Inc., 381 F.Supp. 1057, 1061 (S.D.N.Y.1974), indeed so rules, as do at least two of the three cases cited by Judge MacMahon, Leesona Corp. v. Cotwool Mfg. Corp., 204 F.Supp. 141 (W.D. S.C.1962), and Zip Mfg. Co. v. Pep Mfg. Co., 44 F.2d 184 (D.Del.1930). And there appears to be universal agreement that, at least insofar as the issue of patent validity is concerned, arbitration is inappropriate. See, e.g., N. V. Maatschappij Voor Industriele Waarden, 532 F.2d 874, 190 U.S.P.Q. 385, 386 (2d Cir. 1976); Beckman Instruments, Inc. v. Technical Development Corp., 433 F.2d 55, 62–63 (7th Cir. 1970). It is true that questions of patent coverage, such as might arise, for example, in an action for royalties under a license agreement, are not infrequently determined by arbitration. See, e.g., Robin Products Co. v. Tomecek,

465 F.2d 1193, 1196 (6th Cir. 1972). But where, as here, the "licensee" (or, more accurately, the party granted immunity from suit) legally attacks not only the patent's coverage but its validity, as it is permitted to do under Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), the action does not assert rights arising under the agreement but instead is virtually tantamount to a repudiation of the agreement. B & W itself apparently regarded the agreement as effectively terminated by FWC's non-payment of royalties when it sued FWC for infringement in the Indiana court, and when it counterclaimed for infringement here. Thus it seems wholly inconsistent and inappropriate for B & W to urge enforcement of the arbitration clause of the agreement, particularly while simultaneously urging this Court to grant a separate and speedy trial of the issue of coverage of the '646 patent.

■ This Court will therefore deny B & W's motion to compel arbitration of the issues of patent validity or infringement and to stay any proceedings herein pending such arbitration whether or not the Court is bound, by principles of res judicata, to follow the previous ruling of the Indiana court to that effect. See Southern Pacific R.R. Co. v. United States, 168 U.S. 1, 24, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897).

## II. Plaintiffs' motion for leave to file an amended complaint

The Complaint now on file in this action seeks a declaratory judgment that B & W's '358 and '646 patents have not been infringed by plaintiffs and are invalid and/or unenforceable on a number of grounds including prior invention, knowledge or use; lack of originality; obviousness; insufficient disclosure; indistinct claiming; unclean hands in prosecution; late claiming; laches; and failure to file a supplemental oath.

The proposed amendment to the Complaint would add an entirely new cause of action for alleged violation of the antitrust laws by the fraudulent procurement of the '358 and '646 patents, the institution of

baseless lawsuits (including not only the Indiana action and the counterclaim here, but an action in New Jersey for alleged appropriation of trade secrets) and the settlement of the New Jersey action and the interference by agreements obligating FWC to purchase from B & W large quantities of unpatented tubular products, all as part of a scheme to monopolize the market for once-through steam generating plants and to restrain trade in tubular products.

■ The attempted enforcement of patents obtained by fraud is not a *per se* violation of the antitrust laws, but requires proof of the exclusionary effect thereof on the relevant market. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177–78, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Thus the proposed amendment would inject a host of entirely new issues, such as the scope of the relevant market, the impact of the patents and of the settlement agreements in that market, and so on, requiring extensive additional proofs.

It is conceivable that the parties will never litigate these other issues, depending on the outcome of the present controversy as to the validity and enforceability of the patents in suit. For example, if the Court should rule the patents valid and enforceable over FWC's claims of "unclean hands" in their procurement, the proposed antitrust count would be drastically undercut (FWC being in a notably poor position to complain that the New Jersey trade secret action was baseless, after it agreed, in consideration of the dismissal of that action, to purchase $37,500,000 worth of tubular products from B & W, and expressly recited that it did so "freely without duress or threat."). On the other hand, if the Court should rule both patents invalid and/or unenforceable, it appears possible that FWC will decide that is victory enough, considering its professed abhorrence of litigation.

Nevertheless, Rule 15(a), F.R.Civ.P. decrees that leave to amend the pleadings "shall be freely given when justice so requires," and *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) admonishes that "this mandate is to be heeded" and that a plaintiff "ought to be afforded an opportunity to test his claim on the merits" in the absence of "bad faith or dilatory motive." See also *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380 (2d Cir. 1968). And in *Key Pharmaceuticals, Inc. v. Lowey*, 373 F.Supp. 1190, 1193 (S.D.N.Y.1974), this Court observed that leniency is particularly appropriate where the proposed amendment raises issues of patent misuse and consequent unenforceability.

This case differs from *Key Pharmaceuticals* in that there the complaint already on file contained a count for alleged violation of the antitrust laws and the proposed amendment merely set out with greater particularity the factual basis of the antitrust claim and added a count "alleging that the same conduct * * * which has violated the antitrust laws also constitutes actionable misuse of defendants' process patent."

Here, by contrast, FWC proposes to state an entirely new claim of antitrust violation requiring substantial additional evidence.

However, there has apparently been no substantial discovery thus far either in this action or in the aborted Indiana action. And no prejudice to B & W can be perceived in permitting the proposed amendment as compared to the alternative course of requiring FWC to file a separate antitrust action unless the new issues injected by the amendment necessitate the disqualification of B & W's counsel, as discussed hereinafter.

■ Plaintiffs' motion for leave to amend the Complaint will therefore be granted. However, as B & W urges, the issues of patent infringement, validity and enforceability will be tried separately and before the issues which are raised only in the antitrust claim. Discovery as to the latter issues will be stayed pending the Court's decision on the patent issues.

### III. Plaintiffs' motion to disqualify B & W's counsel

Plaintiffs urge that Roland T. Bryan and his law firm should be disqualified to rep-

resent B & W in this action because Bryan is a prospective witness as to (1) the negotiation of the settlement agreements, (2) the inventorship of the claimed inventions and the alleged fraud on the Patent Office and (3) FWC's asserted notification of B & W that it was challenging the validity of the '646 patent.

B & W has responded that it does not intend to call Bryan as a witness. FWC retorts that *it* does so intend and that, under Disciplinary Rule 5–101(B) of the ABA Code of Professional Conduct, as applied in *J. P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357 (2d Cir. 1975), Bryan should be disqualified because he "ought to be called as a witness."

Whether Bryan "ought to be" a witness as to one or more of the three matters suggested by FWC is not readily determinable on the present submissions. The settlement agreements appear to be clear and unambiguous and, under the parol evidence rule, their terms cannot be varied by evidence of the negotiations which preceded their execution. The inventorship of the patented inventions is apparently a matter outside of Bryan's direct knowledge and his testimony would be inadmissible hearsay unless it fell under one of exclusions from or exceptions to the hearsay rule, such as an admission against interest by one of the named inventors or his assignee B & W.

Bryan and/or his firm apparently did prosecute the applications for the patents in suit and the interference proceeding involving the application for the '646 patent. Although all of the representations and disclosures made to the Patent Office during those prosecutions are a matter of public record, it is conceivable that Bryan might be required as a witness in connection with the allegations that he and/or B & W knew of and withheld from the Patent Office information relevant to the patentability of the claimed inventions, or knowingly made material misrepresentations of fact. However, FWC has submitted no evidentiary support for any of these allegations, and it appears manifestly unfair to deprive a litigant of the services of a trusted attorney who, by virtue of his long involvement with the subject matter in litigation, is uniquely qualified to conduct the contest on its behalf, merely because the opposing party makes a charge of fraud without even a token showing of support therefor.

Insofar as concerns FWC's allegation that it notified B & W of its intention to challenge the validity of the '646 patent, FWC obviously is in a position to prove, without calling Bryan, everything it did to put B & W on notice of its intention. If its notice was given to Bryan, B & W's failure to call Bryan as a witness would create an inference tending strongly to confirm FWC's evidence of such notice. If FWC's notice was given to anyone else connected with B & W, Bryan's testimony would be incompetent or unnecessary.

█ Since it does not clearly appear that Bryan "ought to be a witness" in the case, FWC's motion to disqualify him and his firm will be denied without prejudice to its renewal on a better showing of basis for the allegations of fraud in the proposed amended complaint. If FWC should thus renew its motion, the Court reserves the right to reconsider its order granting leave to amend the Complaint and to deny such leave pending trial of issues of patent infringement and validity, at which trial B & W can be represented by Bryan and his firm.

### SUMMARY

All of B & W's motions, except the motion for a separate, expedited trial of the issue of patent infringement or coverage, are denied. Decision on the latter motion is reserved pending a conference with counsel. FWC's motion for leave to amend the Complaint is granted, as indicated.

FWC's motion to disqualify B & W's counsel is denied, as indicated.

SO ORDERED.